Helen NARANJO, Plaintiff and
Respondent,

v.

Jose L. NARANJO, Defendant
and Appellant.

No. 860126–CA.

Court of Appeals of Utah.

March 22, 1988.

Samuel King (argued), Salt Lake City, for defendant and appellant.

Phil L. Hansen, Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and GREENWOOD, JJ.

## OPINION

GARFF, Judge:

Defendant appeals the trial court's judgment in this divorce action, seeking amendment of the judgment.

Plaintiff/respondent, Helen Naranjo, and defendant/appellant, Jose Naranjo, were married on December 4, 1968 and were divorced on February 25, 1985. They had no children during the nearly seventeen year marriage, although defendant helped to raise plaintiff's five children from a previous marriage.

At the time of trial, plaintiff was fifty-nine years old, had ulcers, but was otherwise in good health. During the marriage, she worked intermittently at low-paying jobs. At the time of trial, she was having difficulty finding a job because of her age and lack of skills. Defendant, fifty-one years old at the time of trial, was self-employed as a long-line truck driver and owns his own diesel truck and flat-bed trailer. In the twelve months prior to the divorce, his net income was $27,905. Because of the length of the marriage and the disparity in the parties' earning capacity, the trial court ruled that defendant pay plaintiff $800 per month alimony.

The parties owned a home and property in Magna, Utah, on which the parties had built an oversized garage used by defendant as a truck maintenance and storage facility. The trial court found that this real property had a fair market value of $75,000 at the time of trial, and that the parties' equity in it was $62,242. The trial court awarded plaintiff use and possession of the home, subject to the outstanding mortgage obligation and a lien in favor of defendant for $31,121.

When the parties were first married, defendant owned a house in Kearns. The parties lived in the home for a period of time, jointly made improvements on it and then sold it on contract, with a balance due to them of $37,900. At the time of trial, this contract was in default. The trial

court found that the parties had merged their assets, making the full equity in this house a marital asset, and awarded the contract proceeds to plaintiff.

During the marriage, in 1980, defendant's left knee was seriously injured in an industrial accident. As a consequence, he underwent several surgeries and was unable to work for nine months. Defendant's doctor conjectured that defendant could continue working for only five to ten more years because his knee was steadily becoming more painful and could require future surgery. Subsequently, defendant was awarded a $110,000 judgment in connection with the knee injury, $61,459 of which he ultimately received. Defendant converted $50,000 of these proceeds into joint thrift certificates in his and plaintiff's names and used the remainder for family expenses.

The trial court found that defendant did not meet his burden of showing the amount of the award attributable to pain and suffering, and that the injury award was for lost income and, therefore, joint property. Thus, plaintiff was entitled to share in the injury award. In making these determinations, the trial court explicitly took into account the possibility that defendant would require future surgery by awarding him the majority of the income-producing assets of the marriage, but also found that his possible need for future surgery was "speculative."

Defendant testified that he planned to use the award proceeds to meet his future medical expenses and to offset his potential reduced earning capacity. Plaintiff, without defendant's knowledge or authorization, cashed $30,000 of the certificates and, in her own name, invested them in stock in National Military Underwriters Co., a closely-held corporation for which she worked. In distributing the award proceeds, the trial court split the stock equally between the parties and awarded the remaining thrift certificates to defendant.

The trial court also awarded to plaintiff other marital property so that the value of her award totalled $111,846. Defendant was also awarded additional property,

bringing the total value of his award to $118,009.

On appeal, defendant alleges that the trial court erred in: (1) awarding plaintiff $800 alimony per month; (2) awarding plaintiff all the proceeds from the sales contract of the Kearns home that defendant owned before marriage to plaintiff; (3) awarding plaintiff occupancy rather than just equal ownership of the Magna home; (4) giving plaintiff an equal share of defendant's personal injury proceeds; (5) splitting the National Military Underwriters stock equally between defendant and plaintiff rather than awarding it all to plaintiff and awarding defendant other, offsetting assets; and (6) not looking to the effect of the decree with respect to defendant's future medical needs.

 There is no fixed formula upon which to determine a division of properties in a divorce action, *Turner v. Turner*, 649 P.2d 6, 8 (Utah 1982), the trial court has considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity. *Savage v. Savage*, 658 P.2d 1201, 1203 (Utah 1983). Changes will be made only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion. *English v. English*, 565 P.2d 409, 410 (Utah 1977); *Eames v. Eames*, 735 P.2d 395, 397 (Utah Ct.App.1987).

I

*Alimony*

The purpose of alimony is to "enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge." *Paffel v. Paffel*, 732 P.2d 96, 100 (Utah 1986); *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985). It should, so far as possible, equalize the parties' "respective standards of living and maintain them at a level as close as possible to the standard of living enjoyed during

the marriage." *Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985); *Higley v. Higley*, 676 P.2d 379, 381 (Utah 1983). "[T]he ultimate test of the propriety of an alimony award is whether, given all of these factors, the party receiving alimony will be able to support him- or herself 'as nearly as possible at the standard of living ... enjoyed during marriage.'" *Davis v. Davis*, 749 P.2d 647, 649 (Utah 1988) (quoting *English*, 565 P.2d at 411).

The Utah Supreme Court has consistently articulated three factors which must be considered in fixing a reasonable alimony award: (1) the financial condition and needs of the party seeking alimony; (2) that party's ability to produce a sufficient income for him- or herself; and (3) the ability of the other party to provide support. *English*, 565 P.2d at 411–12; *Davis*, 749 P.2d at 649; *Lee v. Lee*, 744 P.2d 1378, 1382 (Utah Ct.App.1987). Failure to analyze the parties' circumstances in the light of these three factors constitutes an abuse of discretion. *Paffel*, 732 P.2d at 101; *Jones*, 700 P.2d at 1075; *Boyle v. Boyle*, 735 P.2d 669, 671 (Utah Ct.App.1987). As long as the "trial court exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions, we will not disturb its rulings." *Davis*, 749 P.2d at 649.

The trial court found plaintiff, at the time of trial, was unemployed and had no income, and defendant was self-employed, making a net yearly income of approximately $28,000. The Utah Supreme Court has noted that "[i]t is unrealistic to assume that a woman in her mid–50's with no substantial work experience or training will be able to enter the job market and support herself in anything even resembling the style in which the couple had been living." *Jones*, 700 P.2d at 1075.

Plaintiff, who is fifty-nine years old, has spent the last sixteen years of her life as a full-time homemaker while defendant developed his trucking business. It is highly unlikely that she will be able to provide sufficient income to support herself. *See Higley*, 676 P.2d at 381. Considering the needs of plaintiff and the parties' ability to produce income,

> [w]here a marriage is of long duration and the earning capacity of one spouse greatly exceeds that of the other ... it is appropriate to order alimony ... at a level which will insure that the supported spouse ... may maintain a standard of living not unduly disproportionate to that which [she] would have enjoyed had the marriage continued.

*Savage*, 658 P.2d at 1205 (Utah 1983). Defendant's approximate monthly income is $2,300. The alimony award of $800 is slightly more than one-third of defendant's monthly income, not an unreasonable distribution. As such, we find that there has been no abuse of discretion and affirm the trial court's award of alimony.

## II

### Equity in Kearns Home

Defendant asserts that the trial court erred in awarding plaintiff all the proceeds from the sales contract of the parties' Kearns home because his pre-marital equity in the home was traceable and because there was no trial court finding that the parties had merged their pre-marital assets.[1]

As a general rule, pre-marital property, gifts, and inheritances may be viewed as the separate property of the parties. *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987). However, in appropriate circumstances, a party may be awarded property which the other spouse brought into the marriage. *Id.* In fashioning an equitable property division, trial courts must consider all of the pertinent circumstances, including the amount and kind of property to be divided, the source of the property, the parties' health, the parties' standard of living and respective financial conditions, their needs and earning capacities, the duration of the marriage, what the parties gave up by the marriage, and the relation-

---

1. The trial court found that the parties had merged their marital assets. Appellant attempts to argue that this finding does not include *pre-marital assets*.

ship the property division has with the amount of alimony awarded. *Id.* Trial courts "need be guided by the general purpose to be achieved by a property division, which is to allocate the property in a manner which best serves the needs of the parties and best permits them to pursue their separate lives." *Id.*

In this case, we have already noted that the trial court took these factors into account in determining alimony. Given defendant's obligation for spousal support and the minimal standard of living which plaintiff will enjoy under the alimony award, we find no abuse of discretion.

### III

### *Occupancy of Magna Home*

Defendant argues that the trial court's award to plaintiff of occupancy of the parties' Magna home is unfair, in that defendant entered the marriage with a home and leaves without one while plaintiff entered the marriage without a home and leaves with one. He also argues that the award is arbitrary, in that the garage on the property will stand empty while defendant is compelled to rent comparable truck storage and maintenance facilities. Defendant proposes that he receive the entire equity in the Magna home while plaintiff receives the entire investment in National Military Underwriters stock and the $37,900 contract on the Kearns home.

Although defendant entered the parties' marriage with a home and now leaves without occupancy of one, he retains a one-half ownership interest in the Magna property. Under the terms of the divorce decree, plaintiff is required to pay off defendant's $31,121 lien upon the occurrence of the first of several contingencies, including the expiration of five years from the date of entry of the divorce decree. The trial court found that the parties had merged their assets over the course of the marriage and that the full equity is an asset of the marriage. This finding is substantiated by the record.

Even though we appreciate the need which defendant has for the garage on the property, it is "inappropriate for this Court to reverse on an isolated item of property or debt distribution. Rather, this Court must examine the entire distribution to determine if the trial court abused its discretion." *Boyle*, 735 P.2d at 670–71. We find no abuse of discretion with respect to this issue.

### IV

### *Personal Injury Proceeds and National Military Underwriters Stock*

Because of the personal nature of special damages, amounts received as compensation for pain, suffering, disfigurement, disability, or other personal debilitation are generally found to be the personal property of the injured spouse in divorce actions. *See Izatt v. Izatt*, 627 P.2d 49, 51 (Utah 1981). Likewise, money realized as compensation for lost wages and medical expenses, which diminish the marital estate, are considered to be marital property. *See Bugh v. Bugh*, 125 Ariz. 190, 608 P.2d 329, 331 (1980).

The trial court found that defendant's personal injury award was joint property, and awarded plaintiff a portion of it. It reasoned that defendant did not meet his burden of showing the amount of the injury award attributable to compensation for pain and suffering. Defendant argues that he was unable to meet this burden because the judgment was awarded in Colorado, and, according to Colorado procedure, the jury verdict was not broken into general and special damages.

In this case, it is irrelevant whether or not defendant carried this burden of proof because the trial court has power "to make such distributions as are just and equitable, and may compel such conveyances as are necessary to that end." *Jackson v. Jackson*, 617 P.2d 338, 340–41 (Utah 1980). *See also Burnham v. Burnham*, 716 P.2d 781, 782 (Utah 1986). In so doing, the court may take into consideration all of the pertinent circumstances in distributing the parties' property. *Wilkins v. Stout*, 588 P.2d 145, 146 (Utah 1978). Title to marital property prior to a divorce decree is

not necessarily binding on the trial court in its distribution of marital property. *Jackson*, 617 P.2d at 340.

 At the time of trial, plaintiff had already invested $30,000 of the award proceeds in the National Military Underwriters stock. When plaintiff purchased the stock, it was valued at its purchase price, but its current value is unknown. An in-kind distribution of closely-held corporate stock is appropriate where the evidence fails to establish the stock's value. *Savage*, 658 P.2d at 1204–05. The trial court awarded plaintiff one-half of the stock and defendant the other half and all the remaining cash proceeds. It would be inappropriate, given the speculative nature of the investment and the fact that defendant has already been awarded the major income-producing assets, for plaintiff to receive all of the stock and defendant to receive offsetting property. We further note that plaintiff was not given an equal share in the award proceeds from the outset, but only an equal share in the National Military Underwriters stock, so defendant's objection to an equal division of the award proceeds is not well taken. While we do not condone plaintiff's behavior in awarding herself a pre-trial "distribution" of joint assets, in view of the entire allocation of marital assets, we do not find that the trial court abused its discretion. *See Boyle*, 735 P.2d at 670–71.

## V

### *Future Effect of Decree With Respect to Defendant's Medical Needs*

Defendant argues that the trial court did not look ahead to his future medical needs in fashioning the decree. Immediately after the decree was entered, defendant filed a motion to modify, which the court denied.

Utah Code Ann. § 30–3–5 (1984) has been consistently interpreted to mean that the trial court has continuing jurisdiction over the divorce decree with respect to property distributions, and the decree may be mod-

ified when there has been a change in the circumstances or condition of a party since the entry of the original decree. *Thompson v. Thompson*, 709 P.2d 360, 362 (Utah 1985); *Chandler v. West*, 610 P.2d 1299, 1300 (Utah 1980).

 However, defendant has neither alleged nor proven such changed circumstances, so the trial court did not err in refusing to modify the decree.[2]

Finding no abuse of discretion, we affirm the trial court's order and award costs to plaintiff.

BENCH and GREENWOOD, JJ., concur.

---

**2.** Since the filing of this appeal, the trial court, under its continuing jurisdiction, entered a supplemental recommendation and order reducing

the alimony award to $350 per month due to a reduction in defendant's income.