Jan WATSON, Plaintiff and Appellee,

v.

Wayne B. WATSON, Defendant and Appellant.

No. 910223–CA.

Court of Appeals of Utah.

Aug. 24, 1992.

Wayne B. Watson, pro se.

Craig M. Snyder and Leslie W. Slaugh, Provo, for plaintiff and appellee.

Before GREENWOOD, JACKSON and RUSSON, JJ.

### AMENDED OPINION UPON REHEARING [1]

RUSSON, Judge:

Wayne Watson appeals the district court's decree of divorce with respect to alimony, child support, visitation rights and property division. We affirm the trial court's ruling, but remand for a determination of reasonable attorney fees to be awarded Mrs. Watson on appeal.

## I. FACTS

The Watsons were married in Springville, Utah on July 28, 1984. On February 12, 1990, Mrs. Watson filed a complaint for divorce, which was granted on March 18, 1991. The parties stipulated that Mrs. Watson would be awarded custody of the minor child subject to reasonable visitation by Mr. Watson. Mrs. Watson was awarded alimony in the amount of $2000 per month from October 1990 through September 1992, and $1,500 per month thereafter until such time as Mrs. Watson remarried, cohabited or died. She was further awarded child support in the amount of $660 per month. The court also made an extensive property division between the parties.

Mr. Watson appeals the divorce decree, claiming that the trial court erred: (1) in determining alimony; (2) in determining child support; (3) in determining Mr. Watson's visitation rights with the minor child; (4) in awarding Mrs. Watson a vehicle owned by the corporation that employed Mr. Watson, as well as awarding Mrs. Watson certain property owned by Mr. Watson prior to the marriage; (5) in computing the respective parties' equity in the residence and real property; (6) in awarding costs to Mrs. Watson; and (7) in denying Mr. Watson's motion for a new trial based upon alleged inappropriate behavior of Mrs. Watson's counsel. Mrs. Watson seeks attorney fees on appeal.

## II. ANALYSIS

We address Mr. Watson's claims in the order outlined above.[2]

---

1. This opinion replaces the opinion of the same name issued July 2, 1992. The sole change is the addition of section H, "Attorney Fees on Appeal."

2. In the case at bar, Mr. Watson does not comply with Rule 24 of the Utah Rules of Appellate Procedure which sets forth the appellant's briefing requirements in this court. Specifically, Mr. Watson does not supply this court with the appropriate standards of review for the issues raised, pursuant to Rule 24(a)(5). Moreover, he does not include a statement of facts supported by citations to the record in accordance with Rule 24(a)(7). "We remind counsel that it is our prerogative to affirm the lower court decision solely on the basis of failure to comply with the Utah Rules of Appellate Procedure."

## A. Alimony

Mr. Watson claims that the trial court erred in awarding Mrs. Watson permanent alimony. In formulating alimony awards, the trial court has broad discretion, and its decisions will not be overturned absent an abuse of discretion or manifest injustice. *See Schindler v. Schindler*, 776 P.2d 84, 90 (Utah App.1989). In *Schindler*, this court outlined the factors to be considered by a trial court in determining alimony:

> In awarding alimony, appellate courts require the trial court to consider each of the following three factors: (1) the financial conditions and needs of the receiving spouse; (2) the ability of the receiving spouse to produce a sufficient income for him or herself; and (3) the ability of the responding spouse to provide support. If these three factors have been considered, we will not disturb the trial court's alimony award unless such a serious inequity has resulted as to manifest a clear abuse of discretion. The ultimate test of an alimony award is whether the party receiving alimony will be able to support him or herself "as nearly as possible at the standard of living ... enjoyed during the marriage." *English v. English*, 565 P.2d 409, 411 (Utah 1977).

*Id.* (citations omitted).

With respect to Mrs. Watson's financial condition and her ability to produce income, the court found, based upon the evidence at trial, that Mrs. Watson did not work outside the home, and in fact, there was an "agreement by the parties that [Mrs. Watson] would not work outside the home but would remain in the home to care for the parties' minor child." Therefore, the court "decline[d] to impute any income to the plaintiff, at least until the child is in school on a full time basis." With respect to Mr. Watson's ability to provide support, the court found, based on the parties' tax returns from 1986 to 1990, that Mr. Watson had an average gross income of $93,668.75.

Accordingly, the court entered the following finding:

> *Based upon [Mr. Watson's] ability to earn, and the needs of [Mrs. Watson]*, the Court awards alimony to [Mrs. Watson] in the amount of $2000.00 per month, beginning with the month of October 1990, through and including the month of September 1992. Said alimony payments may be paid in two equal monthly installments of $1000.00 each due on the 5th and 20th days of October, 1990 and continuing thereafter through and including September of 1992, when the parties' minor child is scheduled to become enrolled in school on a full time basis.
>
> Beginning with the month of October, 1992, [Mrs. Watson's] alimony award shall be reduced to the sum of $1,500.00 per month
>
> . . . .
>
> Said alimony payments shall continue until such time as the plaintiff remarries, dies or cohabits as defined by statute, or until further order of the court.

(Emphasis added.)

The trial court's written findings demonstrate that the court considered the factors set out in *Schindler*, and those findings are supported by the evidence. Therefore, we conclude that the trial court did not abuse its discretion in determining the alimony award.

## B. Child Support

Mr. Watson argues that the trial court erred in calculating the child support award. In reviewing child support awards, "we accord substantial deference to the trial court's findings and give it considerable latitude in fashioning the appropriate relief." *Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985) (citations omitted). "We will not disturb that court's actions unless the evidence clearly preponderates to the contrary or there has been an abuse of discretion." *Id.*

*West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 n. 1 (Utah App.1991) (citations omitted). However, we decline, in this instance, to exercise our discretion to affirm solely on the basis that Mr. Watson failed to comply with Rule 24(a)(5) and (7). *See id.*

Specifically, Mr. Watson argues that the trial court failed to offset his child support obligation by the amount that he pays in medical and dental premiums for the minor child, as required by Utah Code Ann. § 78–45–7.7(2)(b) (1992), which directs the trial court to:

Calculate each parent's proportionate share of the base combined child support obligation by multiplying the combined child support obligation by each parent's percentage of combined adjusted gross income, and subtracting from the products the children's portion of any monthly payments made directly by each parent for medical and dental insurance premiums.

To mount a successful challenge to the trial court's finding with respect to the child support calculation, Mr. Watson is required to marshal all the evidence supporting the court's finding and demonstrate that the evidence is insufficient to support that finding. *See Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). Mr. Watson fails to satisfy that burden in the present case. Therefore, we assume the record supports the finding, *Crouse v. Crouse*, 817 P.2d 836, 838 (Utah App.1991), and conclude that the district court did not abuse its discretion in setting the child support award.

### C. Visitation

■ Mr. Watson argues the trial court erred in determining his visitation rights with the minor child. Specifically, he contends that the court improperly restricted his "normal" visitation rights by ordering that he return the minor child to Mrs. Watson one-half hour prior to church services at the conclusion of his alternating weekend visitation.

"In determining visitation rights, the trial court must 'give the highest priority to the welfare of the children over the desires of the parent.'" *Ebbert v. Ebbert*, 744 P.2d 1019, 1022 (Utah App.1987), *cert. denied* 765 P.2d 1278 (Utah 1988) (quoting *Kallas v. Kallas*, 614 P.2d 641, 645 (Utah 1980)). Accordingly, we will disturb the trial court's visitation determination only

upon a showing that the trial court has abused its discretion. *See Moon v. Moon*, 790 P.2d 52, 54–55 (Utah App.1990); *Ebbert*, 744 P.2d at 1023.

We have previously noted that the trial court's visitation schedule "should be realistic and reasonable and provide an adequate basis for preserving and fostering the child's relationship with the noncustodial parent." *Ebbert*, 744 P.2d at 1022. In the present case, the trial court awarded Mr. Watson the following visitation with the minor child:

(a) Alternating weekends from Friday at 6:00 p.m. until Sunday morning thirty minutes prior to the start of plaintiff's church meeting.

(b) During the week that the defendant does not have weekend visitation, Wednesday evening from 5:30 p.m. until 8:30 p.m.

(c) Christmas holiday beginning each Christmas day from 1:00 p.m. for one half of the total Christmas holiday vacation period.

(d) One two-week period and one one-week period during each summer vacation period.

(e) Father's Day.

(f) Alternate state and national holidays, except for Christmas Day which is dealt with separately hereinabove.

Mr. Watson does not demonstrate that the foregoing visitation schedule is unreasonable as to deny him a sufficient basis to preserve his relationship with the minor child. Further, the court's order which requires Mr. Watson to return the child so that he may attend his regular church meetings is not so unreasonable as to amount to an abuse of discretion by the trial court. Therefore, we conclude that the district court did not err in determining Mr. Watson's visitation rights.

### D. Property Division

Mr. Watson claims that the trial court erred in awarding Mrs. Watson the 1985 BMW automobile which was owned by the corporation that employed him. He further claims that the trial court erred in

awarding Mrs. Watson certain personal property that was his premarital property.

"There is no fixed formula upon which to determine a division of properties in a divorce action[.]" *Naranjo v. Naranjo*, 751 P.2d 1144, 1146 (Utah App.1988) (citation omitted). We afford the trial court "considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity." *Id.* (citation omitted). Accordingly, changes will be made in a trial court's property division determination in a divorce action "only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion." *Id.* (citations omitted).

### 1. *Corporate Property*

■ Mr. Watson claims that the trial court erred in awarding Mrs. Watson the BMW automobile on the ground that it was not subject to marital distribution because it was a non-marital asset owned by the corporation that employed him. Mrs. Watson responds that the unity of interest between Mr. Watson and his solely owned corporation requires that the latter be viewed as the alter ego of the former for purposes of this action. We agree.

In *Colman v. Colman*, 743 P.2d 782 (Utah App.1987), we set out the requirements for setting aside a corporate entity under the alter ego doctrine.

> To disregard the corporate entity under the equitable alter ego doctrine, two circumstances must be shown: (1) Such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the alter ego of one or a few individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in an inequity.

*Id.* at 786 (citations omitted).

The record in this case demonstrates that the two requirements set forth in *Colman* are satisfied. First, there was a unity of interest between Mr. Watson and the professional corporation that employed him. Mr. Watson was the sole shareholder in the corporation and regularly purchased automobiles in his corporate name for the couple's personal use. Further, Mr. Watson included the corporation's automobiles as personal assets on his individual financial statements. Finally, there was substantial evidence at trial that Mr. Watson routinely conducted personal business in his corporate capacity. Therefore, the first prong under *Colman* is satisfied.

Second, recognition of the corporate entity would result in an inequity in the case at bar. The record demonstrates that the BMW was purchased during the couple's marriage, that Mrs. Watson had been the principle operator of the BMW during the marriage, and that the trial court awarded the three remaining automobiles used by the Watsons to Mr. Watson. Based on those facts, an inequity would result since Mr. Watson, or the corporation in which he is the sole shareholder, would be awarded all of the automobiles possessed by Mr. and Mrs. Watson during their marriage. Thus, we conclude that the trial court did not abuse its discretion in determining that the automobile was subject to equitable distribution in this action.

### 2. *Premarital Property*

■ Mr. Watson argues that the trial court erred in awarding his premarital property to Mrs. Watson. Specifically, he challenges the award of certain household furniture, garden tools, a washer and dryer, and his premarital contribution to the couple's Nomad trailer.

"Premarital property, gifts, and inheritances may be viewed as separate property, and in appropriate circumstances, equity will require that each party retain the separate property brought to the marriage. However, the rule is not invariable." *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987) (footnotes omitted).

In appropriate circumstances, one spouse may be awarded property which the other spouse brought in to the marriage. The rationale behind this excep-

tion to the general rule is that "[m]arital property 'encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived,'" *Sorensen v. Sorensen*, 769 P.2d 820, 824 (Utah App.1989) (quoting *Gardner v. Gardner*, 748 P.2d 1076, 1078 (Utah 1988)), and that the trial court may, in the exercise of its broad discretion, divide the property equitably regardless of its source or time of acquisition.

*Haumont v. Haumont*, 793 P.2d 421, 424 n. 1 (Utah App.1990) (citations omitted). Additionally, we have held that in dividing property between parties in a divorce action, "[t]he overriding consideration is that the ultimate division be equitable[.]" *Burt v. Burt*, 799 P.2d 1166, 1172 (Utah App. 1990) (quoting *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1278 (Utah 1987)).

In the present case, the trial court made a detailed property division between the parties that spans approximately six pages. In challenging the court's findings, Mr. Watson does not challenge the equity of the division, but only challenges the propriety of including his individual premarital items in the property division. Specifically, Mr. Watson challenges the court's award of certain household furniture, garden tools, and a washer and dryer to Mrs. Watson. However, Mr. Watson disregards the fact that the trial court, pursuant to its equitable powers, also awarded to him certain premarital property belonging to Mrs. Watson, including a microwave oven, an iron, and a vacuum. Accordingly, because the court's ultimate property division was fair and equitable, we determine that the trial court did not abuse its discretion by including certain premarital property of each party in its distribution.

Further, Mr. Watson contends that the trial court erred in awarding the Nomad trailer to Mrs. Watson because the trial court failed to consider his premarital contribution to the purchase of the trailer in arriving at its ultimate division. However, Mr. Watson cites no evidence whatsoever to support this allegation. Moreover, there was sufficient evidence adduced at trial to support the trial court's finding that the Nomad trailer was marital property subject to equitable distribution between the parties. Therefore, the trial court did not abuse its discretion in awarding the Nomad Trailer to Mrs. Watson.

### E. Equity Interest In Home

■ Mr. Watson challenges the trial court's finding with respect to the amount of his equity interest in the parties' home. Specifically, he claims that the trial court, in its calculation, did not consider his contribution of $60,549 that he withdrew from his retirement account and secured with a third mortgage on the home. Mrs. Watson responds that the money withdrawn from the retirement account was not used for construction of the home, and that therefore she should not be held responsible for any portion of the obligation under the third mortgage. The court found:

> Defendant claims, but has not shown, that he withdrew funds from his retirement account and the proceeds of the third mortgage referred to above went into the house, but defendant has made no showing that such is the case, and the court determines that the plaintiff should not be held responsible for the third mortgage to which she did not agree.

"Findings of fact … shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). Moreover, we have held:

> To mount a successful attack on the trial court's factual findings, an appellant must marshal all the evidence in support of the trial court's findings and then demonstrate that, even viewing the evidence in the light most favorable to the findings, the evidence is insufficient to support the findings, *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985), or that its findings are otherwise clearly erroneous. A finding is clearly erroneous, when, even though there is evidence to support it, the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

*Schindler v. Schindler,* 776 P.2d 84, 88 (Utah App.1989).

Not only has Mr. Watson failed to marshal the evidence in support of the above finding and then demonstrate that, even viewing the evidence in the light most favorable to the finding, the evidence is insufficient to support it, but Mr. Watson erroneously claims that the uncontroverted testimony before the trial court was that he used the funds from his retirement account to construct the parties' home. In fact, Mrs. Watson testified before the court that Mr. Watson did not use money from his pension account for construction of the home. Therefore, since there was sufficient evidence to support the court's finding, we conclude that the finding was not clearly erroneous.

### F. Costs

■ Mr. Watson argues that the trial court erred in awarding costs to Mrs. Watson. "We review the trial court's award of costs under an abuse of discretion standard." *Morgan v. Morgan,* 795 P.2d 684, 686 (Utah App.1990) (citing *Frampton v. Wilson,* 605 P.2d 771, 773–74 (Utah 1980); *Lloyd's Unlimited v. Nature's Way Marketing, Ltd.,* 753 P.2d 507, 512 (Utah App. 1988)).

Specifically, Mr. Watson argues that costs were improperly awarded since Mrs. Watson failed to comply with Rule 54(d)(2) of the Utah Rules of Civil Procedure. He further argues that the trial court erred in awarding deposition costs to Mrs. Watson.

The pertinent portion of Rule 54(d)(2) states:

> The party who claims his costs must within five days after the entry of judgment serve upon the adverse party against whom costs are claimed, a copy of a memorandum of the items of his costs and necessary disbursements in the action, and file with the court a like memorandum thereof duly verified stat-

ing that to affiant's knowledge the items are correct, and that the disbursements have been necessarily incurred in the action or proceeding.

The record in this case reflects that Mrs. Watson complied with the terms of Rule 54(d)(2). Under that rule, Mrs. Watson had five days after entry of judgment within which to serve a copy of the memorandum of costs upon Mr. Watson, and file a verified memorandum with the court. However, Rule 6(a) of the Utah Rules of Civil Procedure provides that "[w]hen the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation." Accordingly, Mrs. Watson had five days after March 20, 1991, the day judgment was entered, exclusive of the intermediate Saturday and Sunday, to comply with Rule 54(d)(2). Mrs. Watson mailed a copy of the memorandum to Mr. Watson's attorney, as per Rule 5(b)(1) of the Utah Rules of Civil Procedure,[3] and filed a verified memorandum with the court on March 26, 1990, which date was within the prescribed time limit. Therefore, Mrs. Watson complied with rule 54(d)(2), and is not barred from costs under that rule.

■ Mr. Watson further challenges the award of deposition costs. Costs of depositions are not recoverable unless "the trial court is persuaded that they were taken in good faith and, in the light of the circumstances, appeared to be essential for the development and presentation of the case." *Morgan,* 795 P.2d at 687 (quoting *Frampton,* 605 P.2d at 774) (citation omitted). In *Morgan,* we further provided that:

> [T]he party seeking the cost of deposition bears the burden of proving that the depositions were reasonably necessary. Depositions are reasonably necessary only where the complex nature of the case prevents a party from completing discovery through less expensive meth-

---

**3.** The pertinent portion of Rule 5(b)(1) provides:
Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his known address
. . . .

ods such as interrogatories, requests for admissions, and requests for the production of documents.

*Id.* (citation omitted).

The trial court was persuaded that the depositions were taken in good faith and reasonably necessary to the case at bar. In ruling on Mr. Watson's Motion to Strike Costs, the court specifically found that "the costs set forth [in Mrs. Watson's Memorandum of Costs] were reasonable and necessary for development and presentation of the case." Further, because Mr. Watson failed to include the depositions as part of the record pursuant to Rule 11(e)(2) of the Utah Rules of Appellate Procedure,[4] we must presume that the trial court's finding that Mrs. Watson's costs were reasonable and necessary was supported by the evidence. *See Sampson v. Richins*, 770 P.2d 998, 1002 (Utah App.), *cert. denied*, 776 P.2d 916 (Utah 1989). Finally, without the depositions as a point of reference, this court cannot determine whether Mrs. Watson could have achieved discovery through less expensive methods such as interrogatories, requests for admissions, and requests for the production of documents. Accordingly, we conclude that the trial court did not abuse its discretion in awarding costs to Mrs. Watson.

### G. Motion For New Trial

Lastly, Mr. Watson argues that the trial court erred in denying his motion for a new trial. Specifically, he contends that the trial court should have ordered a new trial because Mrs. Watson's attorney caused Mr. Watson's lender, Wasatch Bank, to increase his monthly loan obligation by fourfold. "In reviewing a court's denial of a motion for a new trial, the ruling on such a motion will be disturbed on appeal 'only for an abuse of discretion.'" *Anton v. Thomas*, 806 P.2d 744, 747 (Utah App.1991) (quoting *Erickson v. Wasatch Manor, Inc.*, 802 P.2d 1323, 1326 (Utah App.1990)) (citation omitted).

Mr. Watson's argument is without merit. In an affidavit filed with the district court, Vern Bailey, Executive Vice President of Wasatch Bank, stated that "Mr. Watson's loan account with Wasatch Bank was treated no differently than any other delinquent loan account." In support of the bank's treatment of Mr. Watson's loan account, Mr. Bailey cited the following factors:

(a) The fact that the loan was unsecured and had been renewed on three previous occasions and had never been paid in full and was now delinquent;

(b) The fact that Mr. Watson did not respond to the bank's collection efforts until the loan became seriously past due;

(c) The fact that the Watsons' domestic problems were common knowledge and in many divorces there are often negative financial problems resulting from divorce; and

(d) On October 12, 1990, Mr. Watson informed [Mr. Bailey] that he had withdrawn his major deposits from Wasatch Bank.

Since Mr. Watson does not establish any impropriety on the part of Mrs. Watson's attorney, the trial court did not abuse its discretion in denying his motion for a new trial.

### H. Attorney Fees On Appeal

Mrs. Watson seeks an award of attorney fees on appeal. "Ordinarily, when fees in a divorce have been awarded below to the party who then prevails on appeal, fees will also be awarded to that party on appeal." *Bell v. Bell*, 810 P.2d 489, 494 (Utah App.1991) (quoting *Burt v. Burt*, 799 P.2d 1166, 1171 (Utah App.1990)). In the case at bar, Mrs. Watson was awarded attorney fees below and has prevailed on appeal. Further, Mr. Watson has not demonstrated why we should diverge from the general rule; therefore, we award Mrs. Watson reasonable attorney fees on appeal.

---

**4.** Rule 11(e)(2) of the Utah Rules of Appellate Procedure provides:

If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.

## III. CONCLUSION

The district court did not err in: (1) determining Mrs. Watson's alimony award; (2) determining the child support award; (3) determining Mr. Watson's visitation rights; (4) awarding Mrs. Watson the 1985 BMW and certain premarital property owned by Mr. Watson; (5) computing the parties' respective equity in the home; (6) awarding costs to Mrs. Watson; and (7) denying Mr. Watson's motion for a new trial. Additionally, we award Mrs. Watson attorney fees on appeal in an amount to be determined by the trial court on remand.

GREENWOOD and JACKSON, JJ., concur.