2016 UT App 182

## THE UTAH COURT OF APPEALS

ANDREA ANDERSEN,
Appellee,
*v.*
ALLEN ANDERSEN,
Appellant.

Opinion
No. 20150299-CA
Filed August 25, 2016

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 124400642

Marshall Thompson, Attorney for Appellant

David C. Blum, Attorney for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1     Allen Andersen (Husband) appeals from the trial court's divorce order awarding Andrea Andersen (Wife) child care costs, child support, and a portion of the couple's marital property. Husband contends the court relied on insufficient or improperly admitted evidence in making its child care and support determinations and in imputing Husband's income. He also contends the court incorrectly concluded that Husband's proceeds from a settlement in a civil lawsuit were marital property because the lawsuit was for Husband's personal injuries. We affirm the trial court's order.

BACKGROUND

¶2　Husband and Wife married in July 2007 and separated in February 2012.[1] Wife filed a petition for divorce in April 2012, seeking sole legal and physical custody of the couple's two children, child support, alimony, and the division of marital property and debts. Husband responded pro se, and later, through counsel, filed a counter petition for divorce seeking among other things joint legal and physical custody of the children and division of the parties' assets and liabilities.[2]

¶3　The parties stipulated that Wife would maintain sole physical custody of the couple's children. But in July 2014, the commissioner certified the case for trial on the issues of child support and care, distribution of property and assets, and income.

¶4　Prior to trial, Husband, representing himself, filed a witness list identifying 132 witnesses and hundreds of unnumbered exhibits, including his financial declaration. Wife objected to some of Husband's exhibits as irrelevant, which objection the trial court sustained. The court ultimately received roughly sixty exhibits, including Wife's financial declaration, tax returns, and information regarding the parties' property.

¶5　In March 2015, the trial court held a two-day bench trial. Five witnesses, including Husband and Wife, testified, and the court issued its determinations in a fifty-nine page memorandum decision. With regard to Husband's income and child support,

---

1. "[W]e view the facts in the light most favorable to the [trial court's] findings," and therefore recite them accordingly. *Kelley v. Kelley*, 2000 UT App 236, ¶ 18, 9 P.3d 171.

2. At various times prior to trial, Husband represented himself or was represented by one of at least six different attorneys.

the court noted that it had "great difficulty in attributing full candor to [Husband] on financial matters." According to the court, because of inconsistent evidence, which included Husband's financial declaration, testimony, and tax returns, it was "impossible to impute a fair amount [of income] with any level of certainty." In the end, the court ordered Husband to pay child support "based on his imputed income of $5500 per month."

¶6     Regarding the cost of the children's child care, the court found that the cost varied based on the amount of time the children spent at the care center. It also explained that, based on Wife's testimony, the day care the children attended did not send a statement or bill. But the court noted the costs were deducted directly from Wife's paychecks, which she offered into evidence.

¶7     Finally, the trial court distributed the parties' marital property, including, in relevant part, $130,000 that Husband received in a settlement from Riverton City (the City) stemming from a civil suit alleging the City violated the Fair Housing Act. Husband argued the settlement proceeds were separate property because they were received as the result of a personal injury. To support his contentions, Husband provided a copy of his amended complaint (the Amended Complaint) and a settlement agreement (the Settlement Agreement).[3]

¶8     Husband intended to call the attorney who represented him in the action against the City to testify about the nature of the suit, but because the attorney was unavailable when the court was ready, it did not hear testimony from the attorney. The court ultimately concluded the settlement proceeds were marital

---

3. Husband may have testified regarding the lawsuit, but because he has not provided a full transcript of the trial, we must assume that he did not.

property because the "complaint sought only damages and sought compensation for lost rents and costs and attorney fees for bringing the action" and therefore determined that Wife was entitled to a portion of the proceeds.

ISSUES AND STANDARDS OF REVIEW

¶9     On appeal, Husband raises three main issues challenging the trial court's determinations. First, Husband argues the court erred by relying on Wife's testimony and financial summary when it awarded Wife arrearages in child care payments. Second, he argues "the trial court plainly erred in imputing [Husband's] income without a sufficient evidentiary basis to do so." Finally, he contends the court erred when it determined the settlement proceeds were marital property. Husband also requests attorney fees and costs incurred on appeal.

¶10    "The trial court is afforded broad discretion to admit or exclude evidence, and we 'will disturb its ruling only for abuse of discretion.'" *Lawrence v. MountainStar Healthcare*, 2014 UT App 40, ¶ 16, 320 P.3d 1037 (quoting *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269). Moreover, "[a] challenge to the sufficiency of the evidence concerns the trial court's findings of fact. Those findings will not be disturbed unless they are clearly erroneous." *Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 (citation and internal quotation marks omitted). "This court will approve changes in a trial court's property and debt distribution only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion." *Finlayson v. Finlayson*, 874 P.2d 843, 847 (Utah Ct. App. 1994) (citations and internal quotation marks omitted). As a threshold matter, however, we must consider Wife's response that the trial court's findings and order should be summarily affirmed because Husband has failed to provide a complete record, which

is necessary for appellate review. Specifically, she contends this court "should decline to consider Husband's appeal" because Husband has failed "to provide all of the transcripts from the trial."

ANALYSIS

¶11     Rule 11 of the Utah Rules of Appellate Procedure states:

> If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion. Neither the court nor the appellee is obligated to correct appellant's deficiencies in providing the relevant portions of the transcript.

Utah R. App. P. 11(e)(2). In other words, "[p]arties claiming error below and seeking appellate review have the duty and responsibility to support their allegations with an adequate record." *State v. Wetzel*, 868 P.2d 64, 67 (Utah 1993). Accordingly, "[w]here the record before us is incomplete, we are unable to review the evidence as a whole and must therefore presume that the [judgment] was supported by admissible and competent evidence." *Sampson v. Richins*, 770 P.2d 998, 1002 (Utah Ct. App. 1989) (citation and internal quotation marks omitted).

¶12     Husband has provided only a portion of the transcript of the proceedings below. He attempts to justify this by contending the "trial court in this case made unusually robust findings" and he only provided a partial transcript "because he was unable to afford a complete transcript." The transcript provided begins with Husband's cross-examination of one of Husband's witnesses on March 5, 2015, the second day of trial. There is no transcript of the first day and a half of the two-day trial, during

which Husband, Wife, and three other witnesses testified. Indeed, the partial transcript only includes one witness's full testimony and the parties' closing arguments. We therefore conclude that to the extent Husband challenges the sufficiency of the evidence, particularly where the court's findings rely on the missing testimonies, those challenges must be rejected because we cannot conduct a review of the record as a whole to determine if the resulting findings of fact were clearly erroneous.

## I. Sufficiency of the Evidence

¶13    First, Husband argues the court erred in its award of child care expenses because Wife was required to offer written proof of the costs of child care and because it relied solely on Wife's "improper summary of the child care expenses." With respect to the court's determinations regarding the costs of child care, relying on Wife's testimony, the court found that the "children attend a day care which does not send a statement or bill as [Wife] works for Salt Lake County and it is somehow allied or associated with the county." The court also found that "[Wife] has advised [Husband] of the amount of the monthly cost, though it is not provided in written bill or statement form from the day care provider and so [Wife] cannot provide it to [Husband]." It noted that $416 per month was taken directly from Wife's paycheck and "goes directly to the day care provider." The court also indicated that "[t]he monthly cost, as represented by [Wife], has varied with the amount of time the children spend [there]." Finally, the court found Husband's "various receipts as to what he has paid unpersuasive, given his reduced credibility and lack of clarity in various receipts and money orders shown to the court. Some are not dated, some do not have a payee." The court ultimately accepted Wife's testimony regarding the cost of child care and then required her to provide Husband "some form from the facility as to the monthly cost to be paid" for future costs.

¶14    In making its determinations, the court considered Husband's and Wife's testimonies, Wife's paycheck statements, Wife's summary of her expenses, and Husband's receipts. Although Husband argues Wife should have provided written proof of child care expenses and the court should not have relied on Wife's summary of expenses, Husband cannot meet his burden of showing the court's factual findings are clearly erroneous because we have no record of the parties' testimonies. For example, Husband argues that to properly enter her summary of expenses into evidence, Wife "was required to competently testify about the foundation for the underlying documents." But without a transcript of Wife's testimony, we have no way of knowing if there was testimony regarding foundation. In addition, the court seemed to rely heavily on the parties' testimonies and even discredited Husband's testimony for lack of clarity and credibility. Further, we cannot agree with Husband that the court erred by failing to require Wife to provide written proof of child care costs because Wife provided her paycheck statements demonstrating generally the amount of child care costs and that those costs were taken out of her wages regularly. And because Husband has not sufficiently challenged Wife's summary of expenses, we must presume it was properly received into evidence by the court and that it provided written proof of child care costs. Accordingly, we cannot conclude the court erred in finding that Husband owed $11,883 in child care arrearages.

¶15    Second, Husband contends "there was not a sufficient evidentiary basis for the trial court to impute [Husband's] income at over $65,000 a year." Again, the court's determinations regarding Husband's income rely heavily on Husband's testimony at trial and the court's credibility determinations based on Husband's interactions with the court. The court determined there were large discrepancies between Husband's financial declaration and admitted evidence, which gave it "great pause in believing [Husband] about his income." Without

the transcript of Husband's testimony regarding his income, Husband essentially asks this court to reweigh the documentary evidence in the record, i.e., financial declarations and W-2s, and determine, without the ability to review his testimony, that the court improperly made credibility determinations and factual findings. We refuse to do so. "Where the record before us is incomplete, we are unable to review the evidence as a whole and must therefore presume that the [judgment] was supported by admissible and competent evidence." *Sampson*, 770 P.2d at 1002 (citation and internal quotation marks omitted). We therefore reject Husband's claims challenging the sufficiency of the evidence.

## II. Settlement Proceeds

¶16 Husband argues "the court erred in determining factually and legally that the settlement from the civil rights lawsuit was marital property." He argues it was legal error not to conclude that the settlement was for a personal injury. He further asserts "the court's determination that absolutely no part of the settlement was to compensate for personal injury is unsupported by any facts or findings." Finally, Husband argues the trial court "erred in deciding not to hear testimony from [his attorney in the civil rights case] about the nature of the settlement."

¶17 "There is no fixed formula upon which to determine a division of properties in a divorce action . . . ." *Naranjo v. Naranjo*, 751 P.2d 1144, 1146 (Utah Ct. App. 1988). Accordingly, "[w]e afford the trial court considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity." *Bradford v. Bradford*, 1999 UT App 373, ¶ 25, 993 P.2d 887 (citation and internal quotation marks omitted). Thus, "changes will be made in a trial court's property division determination in a divorce action only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderates against the findings, or such a serious inequity

has resulted as to manifest a clear abuse of discretion." *Id.* (citation and internal quotation marks omitted).

¶18    "In addressing the distribution of property between divorcing spouses, the trial court must first determine whether the assets in dispute are marital or separate property." *Keyes v. Keyes*, 2015 UT App 114, ¶ 28, 351 P.3d 90 (citing *Dahl v. Dahl*, 2015 UT 23, ¶ 121, 345 P.3d 566). "Marital property is ordinarily all property acquired during the marriage . . . whenever obtained and from whatever source derived." *Id.* (omission in original) (citation and internal quotation marks omitted); *see also Gardner v. Gardner*, 748 P.2d 1076, 1078–79 (Utah 1988) (explaining that "marital property encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived" (citation and internal quotation marks omitted)). By contrast, "separate property, which may include premarital assets, inheritances, or similar assets, will be awarded to the acquiring spouse." *Keyes*, 2015 UT App 114, ¶ 28 (citation and internal quotation marks omitted).

¶19    Here, relying on Husband's testimony, the Amended Complaint, and the Settlement Agreement, the court determined that Husband's compensation was marital property. Specifically, it concluded,

> The First Amended Complaint does not mention personal injury. The Settlement Agreement does not use the words "personal injury" anywhere in the document. The allegations included injuries that could be considered personal, such as an arrest, but the settlement did not describe whether the payment was based solely on the Fair Housing Act violations or other aspects of the litigation. The court cannot guess the payment amount was selected because of personal injury, again no claims being directly styled personal injury. The complaint sought only damages and sought compensation for

> lost rents and costs and attorney fees for bringing
> the action.[4]

The court declined to find that the settlement was for a personal injury. But even if we assume it erred by failing to conclude that violations of the Fair Housing Act are not considered personal injuries, we are not convinced the court erred when it determined the settlement was marital property.

¶20 This court has explained that compensation for a personal injury can be either separate property or marital property, depending on the nature of the damages. *Naranjo*, 751 P.2d at 1148. Specifically, "amounts received as compensation for pain, suffering, disfigurement, disability, or other personal debilitation are generally found to be the personal property of the injured spouse in divorce actions." *Id.*; *see also Izatt v. Izatt*, 627 P.2d 49, 51 (Utah 1981) (determining that a wife's personal injury compensation related to a medical malpractice suit that caused her to have two cardiac arrests was her personal property). But "money realized as compensation for lost wages and medical expenses, which diminish the marital estate, are considered to be marital property." *Naranjo*, 751 P.2d at 1148; *see also Bugh v. Bugh*, 608 P.2d 329, 331–32 (Ariz. Ct. App. 1980) (concluding that compensation awarded to an injured employee for lost wages and medical expenses, and not pain and suffering, was marital property).

¶21 So, even assuming Husband's civil rights action against the City equated to a personal injury claim, whether Husband's claims were for personal injuries is not determinative of whether the compensation for those claims constitutes marital or separate

---

4. To the extent the court relied on Husband's testimony, we assume its determinations are accurate because, as discussed above, Husband has offered no transcript of his testimony to conduct a proper review.

property. Rather, the court must look to the nature of the personal injuries to determine whether the compensation is for injuries usually considered so personal as to render it separate property.

¶22    In *Naranjo v. Naranjo*, 751 P.2d 1144 (Utah Ct. App. 1988), this court affirmed the trial court's determination that the defendant's compensation for lost wages and medical costs for a knee injury incurred in an industrial accident was marital property. *Id.* at 1146, 1148–49. The defendant injured his knee during his marriage to the plaintiff. The injury prevented the defendant from working for nine months and required numerous surgeries. *Id.* at 1146. At trial, he argued the compensation was not marital property and that "he planned to use the award proceeds to meet his future medical expenses and to offset his potential reduced earning capacity." *Id.* The defendant further explained that he was unable to articulate how much of the compensation was for pain and suffering "because the judgment was awarded in Colorado, and, according to Colorado procedure, the jury verdict was not broken into general or special damages." *Id.* at 1148. Nevertheless, the trial court found that the defendant had failed to meet his burden of showing the amount of the award attributable to pain and suffering. *Id.* at 1146.

¶23    Like the defendant in *Naranjo*, Husband argues the settlement was separate property, not marital. But Husband has failed to set forth any evidence to show that any amount of the settlement was for pain and suffering. The evidence Husband offered regarding the settlement was his own testimony, the Amended Complaint, and the Settlement Agreement. At most the Amended Complaint alleged Husband was harassed by a city official and was arrested. Husband's prayer for relief in the Amended Complaint only requested compensation for "lost rental income," "start-up costs lost," "[r]easonable [a]ttorney fees," and civil penalties and punitive damages "in an amount

sufficient to punish" the City for violating the Fair Housing Act. At no point did it suggest Husband sought compensation for pain and suffering, nor does it allege the City violated any law that would warrant special damages that could be considered so personal as to render them separate property. Furthermore, as the trial court explained, the Settlement Agreement "did not describe whether the payment was based solely on the Fair Housing Act violation or other aspects of the litigation."

¶24   At trial, Husband had arranged for his attorney in the action against the City to testify regarding the lawsuit and settlement. But because the attorney was not available when the court was ready to hear his testimony, the attorney did not testify. Husband now argues that because the attorney's testimony was relevant, the court erred by not hearing his testimony. We cannot agree.

¶25   Generally, we will not consider an issue on appeal unless it has been preserved. *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. To preserve an issue for appeal, a party claiming error must object on the record to the purported error in a timely fashion. *Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 931 (Utah 1993). The burden is on the appellant to ensure that the record he compiles will adequately preserve his arguments for review. *Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1045 (Utah 1983). "One who fails to make a necessary objection or who fails to insure that it is on the record is deemed to have waived the issue." *Lamb*, 869 P.2d at 931.

¶26   Here, after the examination of one witness concluded earlier than expected, Husband's counsel told the court that the final witness, the attorney who represented Husband in his civil lawsuit, was not available and was not scheduled to testify until later in the afternoon. He offered to call the attorney, and explained that the attorney was "the one that was actually involved in the lawsuit and he's just going to testify with regards to the relationship with the status of that, whether [it involved a]

personal injury or not. He's the one that filed the lawsuit. . . . [and] he's probably the best one to give that testimony we have." The court responded, "So he's going to say what? Tell me specifically what you think he'll say. That [the lawsuit] was for personal injury?" Husband's counsel replied, "That's what his testimony's in relationship to, Your Honor. And more specifically, because he's the one that filed the lawsuit. If Your Honor wants to not do that, I'm prepared to move into closing . . . ." In response, the court indicated that the Amended Complaint, which included a prayer for relief, and the Settlement Agreement were clear on their face and explained that the attorney's characterization of the documents would not make a difference. It expressed doubt that the question of whether the settlement was for a personal injury was a question of fact. Rather, the court stated the question is "probably more a legal question" it could answer for itself. But the court asked rhetorically "I don't know what [the attorney] would say . . . I mean, he could certainly have an opinion, but whether I should even receive it, I'm not sure." Wife's attorney then emphasized that the documentary evidence clearly showed the basis of the lawsuit and that the attorney would only be able to "opine that in his opinion this was personal injury." Husband's counsel did not object and did not ask to wait for the attorney's scheduled testimony, but instead simply said, "At this point then, we would rest."

¶27 While the court indicated it did not think the attorney's testimony would have any bearing on its determinations regarding the lawsuit, it had not yet made a definitive ruling whether it would exclude the testimony or postpone proceedings to hear it. At that point, Husband's counsel effectively capitulated. Indeed, rather than objecting or insisting that the attorney testify, Husband's counsel simply said he was ready to move forward without the testimony. Specifically, he stated, "If Your Honor wants to not [hear from the attorney], I'm prepared to move into closing . . . ." Accordingly, because

Husband did not object and acquiesced to not offering the attorney's testimony—in effect forestalling a final decision on the issue by the court—he waived the objection and has not preserved the issue for our review. *See State v. McNeil*, 2013 UT App 134, ¶ 23, 302 P.3d 844 ("A claim is not preserved for appeal if a party initially objects but later, while 'the wheel's still in spin,' abandons the objection and stipulates to the court's intended action." (citation and footnote omitted)), *aff'd*, 2016 UT 3, 365 P.3d 699.

¶28  In any event, Husband fails to demonstrate that any harm resulted from failing to hear the attorney's testimony. The court asked several times for a detailed explanation of the attorney's testimony. The only response was that the attorney was in the best position to opine about the lawsuit and whether it was for personal injury. Nothing suggested that the attorney would testify regarding the settlement. Further, as explained above, the question of whether the settlement was for personal injury is not determinative of whether the settlement proceeds were marital property, and nothing in the record suggests the attorney could testify about a breakdown of the settlement proceeds, let alone whether any part of the settlement was for Husband's pain and suffering. Furthermore, unless the City told him that the settlement was compensation for personal injuries of the nature Husband urges, as opposed to lost income or other economic loss, to opine that the settlement was for personal injuries would be outside the scope of his layperson testimony.

¶29  We therefore conclude the trial court did not err when it determined that the settlement proceeds were marital property. Further, because he failed to actually object to the court not hearing the attorney's testimony, Husband has not preserved the issue for appeal. In any event, he has not met his burden of proof to demonstrate that not hearing the attorney's testimony was a harmful error.

### III. Attorney Fees

¶30 Husband "requests that this Court award him his attorney fees and costs on appeal." In response, Wife argues that because she was awarded attorney fees below and "will substantially prevail on this appeal," she should be awarded her attorney fees incurred on appeal.

¶31 In divorce proceedings, "a [trial] court may order a party to pay the costs, attorney fees, and witness fees, including expert witness fees, of the other party to enable the other party to prosecute or defend the action." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 49, 176 P.3d 476 (alteration in original) (citation and internal quotation marks omitted); *accord* Utah Code Ann. § 30-3-3 (LexisNexis 2012). "Both the decision to award fees and the amount of such fees are within the trial court's sound discretion." *Stonehocker*, 2008 UT App 11, ¶ 49 (citation and internal quotation marks omitted). Further, "when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to the party on appeal." *Kimball v. Kimball*, 2009 UT App 233, ¶ 52, 217 P.3d 733 (citation and internal quotation marks omitted).

¶32 In this case, the trial court awarded Wife costs and attorney fees. Accordingly, because Husband has failed to persuade us that the court erred in its award and Wife has therefore prevailed on appeal, we must decline Husband's request to award his attorney fees and costs on appeal, and grant Wife's request.

### CONCLUSION

¶33 In sum, because Husband failed to provide all the necessary transcripts, we are unable to review the whole record for sufficiency of the evidence regarding the court's findings about the child care and support costs and the imputation of

Husband's income. We therefore reject Husband's challenges to these findings. We also conclude that Husband has failed to meet his burden of demonstrating the court erred in determining the settlement proceeds from Husband's suit against the City were marital property. Although a suit alleging violations of civil rights may be characterized as a personal injury lawsuit, our court has explained that proceeds from a personal injury lawsuit may be either separate or marital property, depending on the nature of the relief sought. *See Naranjo v. Naranjo*, 751 P.2d 1144, 1146 (Utah Ct. App. 1988). Thus, because Husband sought compensation for lost wages and rents—costs usually defined as marital—we cannot agree with Husband that the district court erred. Furthermore, we conclude Husband waived his objection to the court's decision to not hear the attorney's testimony. Finally, because Wife was awarded attorney fees below and has prevailed substantially on appeal, she is entitled to attorney fees and costs incurred on appeal. We therefore affirm the trial court's order and remand the case to the trial court for the limited purpose of calculating and awarding Wife's reasonable attorney fees and costs incurred on appeal.

---