1999 Utah Ct. App. 373

**George R. BRADFORD, Plaintiff and Appellee,**

v.

**Andrea O. BRADFORD and James A. Demita, Defendants and Appellants.**

**No. 981745–CA.**

Court of Appeals of Utah.

Dec. 16, 1999.

 

Howard Chuntz, Orem, for Appellants.

Thomas R. Patton, Aldrich Nelson Weight & Esplin, Provo, for Appellee.

Before GREENWOOD, Associate P.J., and BENCH and BILLINGS, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Mr. George K. Bradford filed for divorce from his wife, Mrs. Andrea O. Bradford, on June 10, 1997. In the same complaint, he alleged Mrs. Bradford had fraudulently conveyed a property interest in the couple's home to her son, Mr. James A. Demita, a named defendant. This appeal thus arises from two related cases tried together by agreement of the parties and the trial court. Mrs. Bradford appeals the trial court's order setting aside her conveyance of her interest in the home to Mr. Demita and the trial court's order awarding the home entirely to Mr. Bradford. We affirm the order setting aside the conveyance, but reverse the award of the home to Mr. Bradford and remand for further proceedings regarding property division between Mr. and Mrs. Bradford.

### RELEVANT FACTS

¶2 The Bradfords were married in June 1985. Each had been married once before, and each had at least one child from the prior marriage. No children were born of their marriage to each other.

¶3 During their marriage, the couple lived in Mr. Bradford's home located in Spanish Fork, Utah. Mr. Bradford was raised in this home, which his grandfather and father both owned before him. Before marrying Mrs. Bradford, he received title to the home from his father as a gift. Several improvements were made to the home during the couple's marriage, including a repaired roof and septic system, the addition of a new furnace, and plumbing work connecting the home to the city's water supply. Mr. Bradford paid for these improvements with funds he received before the marriage as part of a settlement with Geneva Steel. Mrs. Bradford's only contribution to the improvements consisted of making phone calls and arranging for the work to be done. The undisputed present estimated value of the home is $180,000.

¶4 In 1989, approximately four years after they married, Mr. Bradford transferred the

home by way of warranty deed to himself and his wife as "joint tenants with full rights of survivorship and not as tenants in common." Three years later, however, Mr. Bradford filed for divorce and asked that the home and real property be awarded to him. That action was dismissed in 1993 after the parties reunited.

¶ 5 The couple continued to have marital difficulties, and Mr. Bradford threatened divorce many times. Nevertheless, in 1996, the couple engaged in a joint business venture with Mrs. Bradford's son, Mr. Demita, to develop property, upon which the home was located. Mr. Demita was to receive twenty-five percent of the profits for his assistance in developing the property. At the time of this business arrangement, Mr. Demita was living with the Bradfords and had done so rent-free since December 1995.

¶ 6 In July 1996, shortly after the property venture began, Mr. Bradford arrived home to find several engineers in the house. He was upset with the slow progress of the project and had an argument with Mrs. Bradford. This time, the argument was severe, and the couple again discussed divorce.

¶ 7 On August 8, 1996, Mrs. Bradford transferred her interest in the home by way of quit claim deed to her son, Mr. Demita. She later claimed this transfer was for "estate planning purposes." Mr. Demita gave Mrs. Bradford $10 as consideration for the property transfer. Neither Mrs. Bradford nor Mr. Demita told Mr. Bradford about this transaction, and Mrs. Bradford continued to live in the home. Mr. Bradford discovered the existence of the quit claim deed several months later when his daughter went to the County Recorder's Office to verify Mr. Demita's representations that the home and property had been rezoned for development. She found the quit claim deed and discovered the property, in fact, had not been rezoned.

¶ 8 On June 10, 1997, soon after he learned about the deed to Mr. Demita, Mr. Bradford filed a complaint for divorce against Mrs. Bradford and included Mr. Demita as a party to the action. After a bench trial, the court awarded Mr. Bradford a divorce. The trial court also found that the transfer between Mrs. Bradford and Mr. Demita was fraudu-

lent and set aside the conveyance. In awarding the subject property, the trial court concluded the house and real property were not partitionable and would have to be refinanced or sold if awarded to both Mr. Bradford and Mrs. Bradford. The court thus awarded the home and the real property to Mr. Bradford. In addition, the court awarded Mrs. Bradford alimony in the amount of $600 a month and divided equally the remaining marital property, including bank accounts, an IRA account, retirement funds, and the cash value of an insurance policy.

¶ 9 Mrs. Bradford moved the trial court to amend its findings of fact and conclusions of law, but the court denied her motion. Mrs. Bradford and her son then filed this appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 This case involves three critical issues. First, did Mrs. Bradford's conveyance of her joint tenancy interest in the home constitute a fraudulent transfer? Because this issue involves both questions of law and of fact, we review the trial court's findings of fact for clear error. *See Jeffs v. Stubbs,* 970 P.2d 1234, 1244 (Utah 1998). "In contrast, we review a trial court's conclusions as to the legal effect of a given set of found facts for correctness." *Id.* (citing *State v. Pena,* 869 P.2d 932, 936 (Utah 1994)). Nevertheless, "[w]e may still grant the trial court discretion in its application of the law to a given fact situation." *Id.*

¶ 11 Second, if the transfer was fraudulent, and therefore void, was the nature of the property marital or separate? This issue primarily presents a question of law; therefore, we review the trial court's legal conclusions concerning the nature of property for correctness. *See Jefferies v. Jefferies,* 895 P.2d 835, 836 (Utah Ct.App.1995) (considering whether 401(k) plan is marital property).

¶ 12 Third, did the trial court properly award the subject property entirely to Mr. Bradford? In deciding this question, we acknowledge that "[t]rial courts have considerable discretion in determining alimony and property distribution in divorce cases, and will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrat-

ed." *Howell v. Howell,* 806 P.2d 1209, 1211 (Utah Ct.App.1991).

## ANALYSIS

### I. Fraudulent Conveyance

¶ 13 We first address the fraudulent conveyance issue. The trial court concluded the transfer was fraudulent under the Uniform Fraudulent Transfer Act, *see* Utah Code Ann. §§ 25-6-1 to -13 (1998), and declared the transfer void.

■ ¶ 14 A fraudulent transfer in Utah first requires a creditor-debtor relationship. Essentially, a fraudulent transfer occurs when a debtor transfers substantially all his or her assets to another to defraud a creditor or avoid a debt. A "creditor," according to section 25-6-2(4), "means a person who has a claim." A " 'claim' means a right to payment, *whether or not the right is reduced to judgment,* liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, *equitable,* secured, or unsecured." Utah Code Ann. § 25-6-2(3) (1998) (emphasis added); *see also Zuniga v. Evans,* 87 Utah 198, 206, 48 P.2d 513, 516 (1935) (holding persons having tort claim against grantor that was not reduced to judgment at time of conveyance are "creditors").

¶ 15 Although no Utah cases directly address whether a husband or wife becomes a creditor of his or her spouse when contemplating divorce, the Oregon Supreme Court's statement on the subject is helpful to our analysis:

In *Weber v. Rothchild,* 15 Or. 385, 388-89, 15 P. 650, 3 Am. St. Rep. 162 (1887), we held that a person in the position of plaintiff may maintain a suit to set aside a transaction which may defeat her recovery and rights in a contemplated suit for divorce. This rule prevails in other jurisdictions that have considered the matter.

We conclude, as did the trial court, that the conveyance by deed of April 14, 1972, was obtained by fraud to hinder or prevent plaintiff's recovery of [defendant's] equitable interest in the fourplex, in the divorce suit, and is therefore set aside and held to be void.

*Adamson v. Adamson,* 273 Or. 382, 541 P.2d 460, 466 (1975) (citations omitted).

■ ¶ 16 In this case, the trial court determined that "[p]ursuant to Utah Code Ann. § 25-6-2(4) and § 25-6-5 Mr. Bradford is a creditor of Mrs. Bradford in that he has a claim to the real property which Mrs. Bradford deeded to her son, Mr. Demita." The trial court based this conclusion on the fact that Mr. Bradford had threatened divorce just weeks before Mrs. Bradford made the transfer. That conclusion is consistent with the Oregon Supreme Court's analysis in *Adamson,* which we adopt. In our view, the trial court correctly concluded Mr. Bradford was, indeed, a creditor of Mrs. Bradford, given that his claim to the house—although not reduced to judgment in a divorce proceeding—had arisen through recent threats of divorce. We note this conclusion is consistent with our supreme court's admonition to construe the statute liberally "to reach all artifices and evasions designed to rob the Act of its full force and effect." *Butler v. Wilkinson,* 740 P.2d 1244, 1260 (Utah 1987); *see also Givan v. Lambeth,* 10 Utah 2d 287, 291, 351 P.2d 959, 962 (1960) (" '[A]ll statutes made against fraud should be liberally and beneficially expounded to suppress the fraud.' ") (quoting *Twyne's Case,* 76 Eng. Rep. 809 (1601)).

■ ¶ 17 Having concluded Mr. Bradford is a creditor of Mrs. Bradford, we next examine whether Mrs. Bradford made a fraudulent transfer of her joint tenancy interest to her son. According to Utah's Fraudulent Transfer Act, "A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ..., if the debtor made the transfer ... (a) with actual intent to hinder, delay, or defraud any creditor of the debtor." Utah Code Ann. § 25-6-5(1) (1998).

■ ¶ 18 A creditor who claims a debtor transferred property with actual intent to defraud under section 25-6-5(1)(a) must establish that claim by clear and convincing evidence. *See Territorial Sav. & Loan Ass'n v. Baird,* 781 P.2d 452, 462 (Utah Ct.App. 1989). Nevertheless, "[f]raudulent intent is ordinarily considered a question of fact, and

'may be inferred from the presence of certain indicia of fraud or "badges of fraud."' " *Id.* at 462 (quoting *Dahnken, Inc. v. Wilmarth,* 726 P.2d 420, 423 (Utah 1986)) (other citations and footnotes omitted). Utah's statute codifies those factors historically considered by the common law as indicia or badges of fraud in section 25-6-5(2), which states:

> To determine "actual intent" under Subsection (1)(a), consideration may be given, among other factors, to whether: (a) the transfer or obligation was to an insider; [1] (b) the debtor retained possession or control of the property transferred after the transfer;
>
> (c) the transfer or obligation was disclosed or concealed;
>
> (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (e) the transfer was of substantially all the debtor's assets;
>
> . . .
>
> (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred. . . .

*See also Paxton v. Paxton,* 80 Utah 540, 553, 15 P.2d 1051, 1056 (1932) (holding conveyances between near relatives, calculated to prevent creditor from realizing on claim, are subject to rigid scrutiny); *Givan,* 351 P.2d at 962 (holding transactions among close relatives receive close scrutiny but close relationship does not necessarily mean transaction is invalid).

¶ 19 The trial court used these factors in concluding Mrs. Bradford had actual intent to defraud Mr. Bradford. Specifically, the trial court found "that the transfer was concealed from Mr. Bradford, Mrs. Bradford continues to live in the house as before, Mr. Bradford had threatened Mrs. Bradford with divorce a matter of weeks before the transfer, and the transfer was substantially all of the assets that Mrs. Bradford believed that she had."

¶ 20 We, too, conclude these badges of fraud are adequate to show actual intent by Mrs. Bradford to fraudulently convey her interest to her son. Accordingly, we affirm the trial court's findings (including those denominated as conclusions) that the transfer was fraudulent and void. *See* Utah Code Ann. § 25-6-8(1)(a) (1998).

## II.  Nature of Property

█ ¶ 21 Our conclusion that the transfer is void necessarily restores the joint tenancy title to the home in Mr. and Mrs. Bradford. Nevertheless, Mr. Bradford argues the property should be treated as separate property because he inherited it, brought it into the marriage, and maintained and improved it. The trial court, he contends, was therefore correct in awarding the subject property to him despite its joint tenancy status.

█ ¶ 22 Utah law provides that a spouse may transfer his or her interest in separately acquired property into the marital estate. *See* Utah Code Ann. § 30-2-3 (1998). A transfer of otherwise separate property to a joint tenancy with the grantor's spouse is generally presumed to be a gift, *see* 41 C.J.S. *Husband and Wife* § 103(a), at 397 (1991) (citing *Kramer v. Kramer,* 709 S.W.2d 157, 159 (Mo.Ct.App.1986)), and, when coupled with an evident intent to do so, effectively changes the nature of that property to marital property. *See Mortensen v. Mortensen,* 760 P.2d 304, 307–08 (Utah 1988); *see also Bonnell v. Bonnell,* 117 Wis.2d 241, 344 N.W.2d 123, 126 (1984) (stating spouse may transfer separate property into marital estate and "separate property transferred into joint tenancy becomes part of the marital estate"); *cf. Jesperson v. Jesperson,* 610 P.2d 326, 328 (Utah 1980) (finding trial court did not abuse discretion in awarding home held in joint tenancy to wife when "there was no intention by [wife] to create a one-half property interest in [husband], nor any expectation by [husband] that he had received a one-half property interest").

█ ¶ 23 In *Mortensen,* our supreme court considered how property inherited during a marriage should be divided upon divorce. After examining the law in other jurisdictions, the court announced that, as a

1.  The relevant portion of the Act includes in its definition of an "insider" a person who is "a relative of the debtor." Utah Code Ann. § 25-6-2(7)(a)(i) (1998).

general rule, "property acquired by one spouse by gift and inheritance during the marriage [should be awarded] to that spouse, together with any appreciation or enhancement of its value." *Mortensen*, 760 P.2d at 308; [2] *see also Haumont v. Haumont*, 793 P.2d 421, 424 (Utah Ct.App.1990) ("[E]quity [generally] requires that each party retain the separate property he or she brought into the marriage."). This rule applies

> unless (1) the other spouse has by his or her efforts or expense contributed to the enhancement, maintenance, or protection of that property, thereby acquiring an equitable interest in it, ... or (2) the property has been consumed or its identity lost through commingling or exchanges *or where the acquiring spouse has made a gift of an interest therein to the other spouse.*

*Mortensen*, 760 P.2d at 308 (emphasis in original).

¶ 24 In this case, the record is clear, and the trial court found, that Mr. Bradford conveyed his interest in the home to himself and his wife as "joint tenants with full rights of survivorship and not as tenants in common." According to the trial testimony, Mr. Bradford intended at that time to give a one-half interest in the home to his wife.[3] Nothing in the trial court's findings or the record indicates otherwise. We therefore conclude the transfer of Mr. Bradford's separate property to his wife as a joint tenant with himself effectively transformed the subject property from Mr. Bradford's separate property into marital property.

### III. Property Award

▮▮▮ ¶ 25 Our determination regarding the property's nature does not end our inqui-

ry, for we must also decide whether the trial court properly awarded the home, even though marital property, entirely to Mr. Bradford.

"We afford the trial court 'considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity.' Accordingly, changes will be made in a trial court's property division determination in a divorce action 'only if there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderated against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.'"

*Thomas v. Thomas*, 375 Utah Adv. Rep. 23, 25, 987 P.2d 603, 609 (Utah Ct.App.1999) (quoting *Watson v. Watson*, 837 P.2d 1, 5 (Utah Ct.App.1992) (quoting *Naranjo v. Naranjo*, 751 P.2d 1144, 1146 (Utah Ct.App. 1988))).

▮▮▮ ¶ 26 Generally, in a divorce proceeding "[e]ach party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property." *Id.* (alteration in original) (citations and additional quotation marks omitted). This presumptive rule of thumb, however, does not supersede the trial court's broad equitable power to distribute marital property, regardless of who holds title. *See Finlayson*, 874 P.2d at 849 ("'Both this court and the Utah Supreme Court have long held that once a court has determined something is marital property, the court may distribute it equitably, notwithstanding which party's name appears on the title.'" (Citation omitted.)); *Haumont*, 793 P.2d at 424 n. 1 ("[T]he trial court may, in the exercise of its broad discretion, divide

---

**2.** Although the subject property in *Mortensen* was inherited during the couple's marriage, subsequent courts have applied the *Mortensen* ruling to property inherited before marriage. *See, e.g., Finlayson v. Finlayson*, 874 P.2d 843, 847 (Utah Ct.App.1994) ("'[E]ach party should, in general, receive the real and personal property he or she brought to the marriage or inherited during the marriage.'" (Quoting *Mortensen*, 760 P.2d at 306.) (Alteration in original.) (Other citations omitted.)).

**3.** Mr. Bradford testified as follows:

> Q: What do you remember about [your discussion with your daughter concerning the joint tenancy]? Did you ever have a concern that [Mrs. Bradford] would get all of the property if you died first?
> A: No, I didn't.
> Q: You never worried about that?
> A: Well, I signed it expecting that—her name on there expecting that she would only get half of it.
> Q: And that was your intention, wasn't it?
> A: Yes.

the property equitably, regardless of its source or time of acquisition."); *Naranjo,* 751 P.2d at 1146 ("There is no fixed formula upon which to determine a division of properties in a divorce action."). A trial court may elect to distribute marital property unequally when the circumstances and needs of the parties dictate a departure from the general rule (e.g., to enable one party to fulfill an alimony or child support obligation). *See Thomas,* 375 Utah Adv. Rep. at 25, 986 P.2d at 609; *see also Burke v. Burke,* 733 P.2d 133, 135 (Utah 1987) (holding trial courts should be guided by general purpose of property division, "which is to allocate the property in a manner which best serves the needs of the parties and best permits them to pursue their separate lives"); *Newmeyer v. Newmeyer,* 745 P.2d 1276, 1279 n. 1 (Utah 1987) ("In determining whether a certain division of property is equitable, ... the relative abilities of the spouses to support themselves after the divorce are pertinent to an equitable ... division of the fixed assets of the marriage."); *Cox v. Cox,* 877 P.2d 1262, 1269–70 (Utah Ct.App.1994) (affirming award to husband of marital home previously owned by husband but conveyed to wife in joint tenancy just before marriage; trial court found marriage was of short duration, no children were born, and couple married later in life).

¶ 27 An unequal division of marital property, however, is only justified when the trial court "memorialize[s] in commendably detailed findings" the exceptional circumstances supporting the distribution. *Thomas,* 375 Utah Adv. Rep. at 25, 986 P.2d at 609; *see also Haumont,* 793 P.2d at 425 (holding property division must be supported by adequate factual findings). In this case, the trial court's only finding justifying the award of the home to Mr. Bradford was that "the house and property is in fact not partitionable as it contains a residence, road and river frontage. If an interest were to be conveyed the house would have to be refinanced or sold."[4] This finding is insufficient, by itself, to support an award of the marital home entirely to Mr. Bradford. Trial

courts often order a sale of marital property and equitably divide the proceeds between the parties. *See, e.g., Workman v. Workman,* 652 P.2d 931, 933 (Utah 1982). A trial court may also allow one spouse to "buy out" the other spouse's interest in marital property. *See, e.g., id.* The trial court made no adequate finding explaining why either of these two remedies was not appropriate for the parties in this case. Accordingly, we reverse the trial court's award of the marital home solely to Mr. Bradford.

¶ 28 Nevertheless, our role is not to supplant the trial court's function in making a property distribution; the trial court is in a much better position to determine a proper remedy. Moreover, an award of the subject property in this case has an integral relationship to the trial court's other orders concerning alimony and other property. We therefore remand this case to the trial court to determine these matters in light of our conclusion that the subject property is marital, not separate, property.

¶ 29 WE CONCUR: RUSSELL W. BENCH, Judge, and JUDITH M. BILLINGS, Judge.

---

4. We note, also, that the parties at one time, at least, contemplated development and sale of the property and had enlisted Mr. Demita's assistance in doing so.