**2019 UT App 130**

## THE UTAH COURT OF APPEALS

MICHAEL ALLEN PLAIA,
Appellee,
*v.*
ALINA VICTORIA PLAIA,
Appellant.

Opinion
No. 20170948-CA
Filed July 26, 2019

Third District Court, Silver Summit Department
The Honorable Kara Pettit
No. 144500139

Alina Victoria Plaia, Appellant Pro Se

Dean C. Andreasen and Laura D. Johnson, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

HAGEN, Judge:

¶1     Alina Victoria Plaia appeals the district court's
enforcement of the stipulation (Stipulation) she entered into with
her ex-husband Michael Allen Plaia in the course of their divorce
proceeding. Alina[1] argues that the Stipulation should be set
aside because it distributes non-marital property—shares in a
company that employed Alina—to Michael as the result of a
mutual mistake and because it inequitably distributes the shares.
Because the district court did not abuse its discretion in

---

1. Because both parties share the same surname, we refer to them
by their first names with no disrespect intended by the apparent
informality.

enforcing the Stipulation and distributing half of the shares to Michael, we affirm.

BACKGROUND[2]

¶2    Michael and Alina married in 2001. In 2009, Alina co-founded Wide Bridge, Inc., an advisory and financial services company. In 2010, Alina, Michael, and their two children moved from New Jersey to Utah, although Alina continued to travel to New York for her work with Wide Bridge. In 2012, Alina acquired a company named Luxoft as a client for Wide Bridge. As compensation for Alina's work on Luxoft's initial public offering (IPO), Luxoft and Alina entered into an engagement letter, which Alina asserts "provided for a grant of up to 29,412 shares of [Luxoft] to [Alina], the CEO and Co-founder of [Wide Bridge], subject to other terms and conditions."[3] Alina assisted Luxoft with its IPO in June 2013, and she became its Vice President of Global Communications.

¶3    Of the 29,412 shares, Alina "was issued and received 5,886 . . . in February 2014, pursuant to a restricted share award agreement." The restricted share award agreement provided that the 5,886 shares would vest on June 15, 2014, subject to Alina's satisfaction of the "Criteria of Long Service Condition" or "CLS."

---

2. "We view the evidence and all the inferences that can reasonably be drawn therefrom in a light most supportive of the trial court's findings." *Baker v. Baker*, 866 P.2d 540, 543 (Utah Ct. App. 1993) (quotation simplified).

3. Alina did not offer into evidence the engagement letter, dated November 1, 2013. The terms of the engagement letter must be gleaned from an amended agreement, dated May 12, 2015, which recited that the engagement letter "provided for a grant of up to 29,412 shares" of Luxoft to Alina.

The CLS required Alina's continued "employment or service as a consultant" for Luxoft through the vesting date. According to email correspondence between Luxoft and Alina dated April 1, 2015, the 5,886 shares were delivered in 2014,[4] with the expectation that Alina would receive the remaining 23,526 shares between 2015 and 2017.

¶4 In July 2014, Michael filed a petition for divorce in Utah. Alina subsequently filed for divorce in New Jersey. In her disclosures of the parties' marital assets, Alina listed "Luxoft Holding via Morgan Stanley 29,412 shares at $32 (5,886 vested)."[5]

¶5 Each represented by counsel, Alina and Michael entered into mediation and on October 2, 2014, they signed the Stipulation, in which the parties agreed as follows:

> During the course of the marriage, the parties acquired an interest in a business known as Wide Bridge, Inc. with Luxoft as their primary client. With the exception of the Luxoft shares awarded to [Michael] herein, [Alina] is awarded all the parties['] interest, accounts and assets in Wide Bridge, Inc. and shall assume, and pay all debt associated with the parties' interest in Wide Bridge,

---

4. There is some ambiguity in the record as to whether the 5,886 shares vested in June 2014 or later in October 2014.

5. In addition to filing a divorce petition in New Jersey, Alina filed a motion to dismiss the Utah divorce action claiming that Utah lacked subject matter jurisdiction. The district court determined that it had jurisdiction over the divorce proceeding, and Alina does not challenge that ruling on appeal. The New Jersey court dismissed the New Jersey petition.

> Inc., holding [Michael] harmless therefrom. After receipt of the Luxoft shares awarded to [Michael], [Michael] hereby waives all interest in Wide Bridge, Inc.

The Stipulation further provided that Michael and Alina were to receive one-half each of 23,526 unvested Luxoft shares and 5,886 vested shares. The Stipulation also equally divided the shares that Michael owned in his employer's company but it awarded Michael all the 2014 distributions Michael received from those shares. Regarding the shares that Alina and Michael agreed to divide equally as marital property, the Stipulation provided that "[e]ach party will sell the shares of stock, stock option and units awarded to the other party and will ensure the other party receives documentation of what the shares sold for and the funds from said sale."

¶6      Subsequently, Alina sought to set aside the Stipulation on various grounds, and the divorce proceeded to a bench trial in 2017. At trial, Alina argued that Michael was not entitled to any of the of 23,526 Luxoft shares that vested after September 1, 2014, because Michael did not provide any "assistance and or contribution" to Alina as she continued to acquire shares after that date. Because she had already stipulated that Michael would receive one half of all the shares, Alina also argued that the court should set aside the Stipulation as "she did not realize she had not yet earned all" of the shares at the time she entered into the Stipulation. According to Alina, "[a]t the time of the Stipulation, both parties were under the impression that Alina had already earned 23,526 shares of unvested stock" but, in reality, the shares "were not only unvested, they were unearned altogether." In support of this contention, Alina testified that she was required to renegotiate with Luxoft after she entered into the Stipulation with Michael to receive any more of the 23,526 shares to which she mistakenly believed she was already entitled and that she still had not received as many shares as she had

expected to receive by the date of trial. Alina also argued that "awarding Michael half of 23,526 shares would be unfair and inequitable, especially in light of the fact that he pocketed 100% of his 2014 distribution from his employer."

¶7      After trial, the district court entered findings of fact and conclusions of law, stating that "no mutual mistake has been demonstrated to warrant setting aside the [Stipulation]" because Alina "was not mistaken as to the existence of the [Luxoft] stock options" and had not presented sufficient evidence to support her contention that the parties mistakenly believed the unvested Luxoft shares were marital property or that the parties had not worked together to secure the shares.

¶8      Based on its findings of fact and conclusions of law, the district court entered a divorce decree in October 2017. Alina, now representing herself, appeals.

ISSUES AND STANDARDS OF REVIEW

¶9      Alina argues that the district court erred by enforcing the Stipulation and awarding Michael one half of the Luxoft shares in the parties' divorce decree. "[D]istrict courts have considerable discretion concerning property distribution in a divorce proceeding and their determinations enjoy a presumption of validity. Thus, we will uphold the decision of the district court on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Dahl v. Dahl*, 2015 UT 79, ¶ 119 (quotation simplified). The district court's decision to enforce, reject, or modify "a stipulation related to property division in a divorce proceeding is [also] reviewed for an abuse of discretion." *Jensen v. Jensen*, 2008 UT App 392, ¶ 6, 197 P.3d 117. A district court abuses its discretion in dividing marital property if "the court misunderstood or misapplied the law, the evidence presented on property values clearly preponderates against the findings, or the court's distribution results in such a serious

inequity as to constitute an abuse of discretion." *Morgan v. Morgan*, 795 P.2d 684, 689 (Utah Ct. App. 1990).

¶10    Alina contends that the district court abused its discretion for two reasons: 1) the court incorrectly determined that Alina and Michael were not mutually mistaken as to whether all the Luxoft shares were marital property at the time the parties entered into the Stipulation, and 2) the district court inequitably awarded Michael one half of the Luxoft shares when he did not contribute to their vesting. These issues involve factual determinations and conclusions of law. "A district court's factual findings are reviewed deferentially under the clearly erroneous standard, and its conclusions of law are reviewed for correctness with some discretion given to the application of the legal standards to the underlying factual findings." *Erickson v. Erickson*, 2018 UT App 184, ¶ 12, 437 P.3d 370 (quotation simplified).[6]

---

6. Alina also appeals the district court's award of parent-time and child support relating to the parties' two children. She contends that the court's award of parent-time did not accurately reflect the recommendations of the custody evaluator. Although the court awarded parent-time and calculated child support in accordance with the custody evaluator's recommendations, Alina objected that the conditions of parent-time were not made sufficiently clear in the divorce decree. After Alina filed her opening brief, the district court issued an additional order, clarifying that it intended to award Michael a minimum of 124 days of parent-time. Alina acknowledges in her reply brief that this clarification addressed "exactly what [she] asked for the Court of Appeals to review." She further concedes that "[a]t this juncture, she only asks the Court of Appeals to affirm that the minimum time awarded to Michael should be based on 2/3 of the amount of non-school overnights during each school year

(continued…)

ANALYSIS

¶11    In divorce actions, "[i]t is the court's prerogative to make whatever disposition of property . . . it deems fair, equitable, and necessary for the protection and welfare of the parties." *Pearson v. Pearson*, 561 P.2d 1080, 1082 (Utah 1977). And when parties to a divorce action stipulate to the division of property, "the governing principle in our law is that contracts between spouses are enforceable and generally subject to ordinary contract principles so long as they are negotiated in good faith and do not unreasonably constrain the divorce court's equitable and statutory duties." *Ashby v. Ashby*, 2010 UT 7, ¶ 21, 227 P.3d 246 (quotation simplified). Alina argues that the district court erred in enforcing the Stipulation because the parties were mutually mistaken as to the status of her stock options and the Stipulation's distribution of property was inequitable.[7] We address each argument in turn.

_____

(…continued)
and not to be tied to a particular number, to avoid confusion." Because Alina has not appealed the district court's order clarifying the decree, we cannot reach this issue.

7. Alina contends that there are three additional reasons that the district court erred in declining to set aside the Stipulation and in dividing the marital property. First, she argues that the shares were actually property of Wide Bridge and therefore not marital property. Second, she argues that the district court "abuse[d] its discretion in ordering a sale of Luxoft stock immediately upon vesting, thereby incurring tax expenses at a personal tax rate instead of corporate." Third, she argues that it is impossible for her to comply with the decree because she did not receive all the Luxoft shares identified in the Stipulation. Because the first two arguments were not "presented to the district court in such a

(continued…)

## I. Mutual Mistake

¶12     Alina argues she and Michael mistakenly believed at the time they entered into the Stipulation that the Luxoft shares were marital property.[8] "The governing principle in our law is that contracts between spouses are enforceable and generally subject to ordinary contract principles so long as they are negotiated in good faith and do not unreasonably constrain the divorce court's equitable and statutory duties." *Ashby v. Ashby*, 2010 UT 7, ¶ 21, 227 P.3d 246 (quotation simplified). However, "when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain," they may be entitled to rescind their stipulation. *See Bergmann v. Bergmann*, 2018 UT App 130, ¶ 14,

---

(…continued)

manner that the court had a meaningful opportunity to rule" on them, they are unpreserved and we decline to consider them. *See Dahl v. Dahl*, 2015 UT 79, ¶ 207. Her third argument regarding impossibility rests on events allegedly occurring after the entry of the divorce decree and therefore it must be raised, if at all, in the context of a petition to modify.

8. To the extent Alina also argues that the Stipulation should be rescinded under the doctrine of unilateral mistake, *see Guardian State Bank v. Stangl*, 778 P.2d 1, 5 (Utah 1989) (holding that a contract may be rescinded or reformed on the basis of unilateral mistake when one party is aware of the other party's mistake and such mistake is "produced by fraud or other inequitable conduct by the nonerring party"), this argument is neither preserved nor supported by citations to evidence in the record, *see State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation.").

428 P.3d 89 (quotation simplified). A party to a stipulation is entitled to rescind it "when, at the time [a stipulation was] made, the parties ma[de] a mutual mistake about a material fact, the existence of which is a basic assumption of the contract." *Deep Creek Ranch, LLC v. Utah State Armory Board*, 2008 UT 3, ¶ 17, 178 P.3d 886 (quotation simplified). But "if the parties harbor only mistaken expectations as to the course of future events and their assumptions as to facts existing at the time of [a stipulation] are correct, rescission is not proper." *Id.* (quotation simplified). A party seeking to rescind a stipulation on the basis of mutual mistake bears the burden of showing mutual mistake of fact by clear and convincing evidence. *Mabey v. Kay Peterson Constr. Co.*, 682 P.2d 287, 290 (Utah 1984).

¶13　Here, Alina contends that she and Michael "were both under the impression the shares were likely earned by Alina . . . and [would] vest over 3 years." In support of this contention, Alina testified at trial that she and Michael understood that she would receive "all of the shares" Luxoft had agreed to assign to her "right after" Luxoft's IPO, which occurred in June 2013, but instead, she did not receive any shares until October 2014, after she had entered into the Stipulation. She further testified that as a result of her not receiving the entirety of the shares to which she believed she was entitled, she "went back to Luxoft" in February 2015 to negotiate her receipt of the remaining 23,526 shares and entered into a new agreement separate from the one she negotiated with Luxoft during her marriage to Michael.

¶14　After considering Alina's testimony and other evidence presented at trial, the district court concluded that Alina was not entitled to rescind the Stipulation. In reaching this conclusion, the court acknowledged that Alina "testified to her being 'mistaken' or that she didn't understand, and referenced continuing discussions with Luxoft," but the court ultimately determined that the evidence demonstrated that Alina knew at the time she entered into the Stipulation, "that the shares . . .

would vest over time [because] the Stipulation refers to vested and unvested shares" and the Stipulation also states that "each party will sell the shares of stock, stock options and units awarded to the other party as soon as possible." The court also relied on the sworn disclosure of marital property that Alina made in her case information statement in the New Jersey divorce action—filed August 1, 2014—in which Alina "declared she had income from Luxoft stock that was 'vested, not sold,'" stated that she received stock options annually, and declared ownership of all 29,412 Luxoft shares. Because Alina was aware that she would take possession of the remainder of the shares after separating from Michael, the court concluded that "[n]o mutual mistake has been demonstrated to warrant setting aside the parties' agreement."

¶15   We agree with the district court that Alina has not shown by clear and convincing evidence that she is entitled to rescind the Stipulation due to mutual mistake. Alina testified—in contrast to her present assertion to the contrary—that she learned as early as June 2013, when all the shares did not vest immediately after Luxoft's IPO, that the Luxoft shares would not vest all at once. She was also given notice that not all of the 29,412 shares would vest at the same time that she received 5,886 of the shares in June 2014, several months before she stipulated to the award of one half of all the 29,412 shares to Michael. And as the district court noted, Alina's understanding that the additional shares would not vest until after her separation from Michael but that she was nevertheless entitled to more shares annually is also reflected in her sworn declaration in the New Jersey divorce action where she claimed ownership of all 29,412 shares.

¶16   Alina argues that the shares were not only "unvested" but "unearned" and that the district court failed to appreciate the distinction. However, she has not established that, at the time of the Stipulation, she and Michael mistakenly believed that the

shares were fully earned and required no post-separation efforts. Although Alina failed to introduce her original engagement letter dated November 1, 2013, which "provided for a grant of up to 29,412 shares," the restricted share award agreement relating to the initial 5,886 shares provided that vesting was subject to Alina's compliance with the CLS, a condition that required Alina's continued "service as a consultant" to Luxoft on the vesting date of June 15, 2014. Because that agreement pre-dated the Stipulation, the parties presumably knew that future vesting would be subject to the CLS condition and thus post-separation efforts on Alina's part were a condition of the remaining shares vesting. This evidence supports the district court's conclusion that the parties were not mistaken as to the status of the remaining 23,526 shares.

¶17   In light of Alina's testimony, the terms of the agreements between Alina and Luxoft admitted into evidence, Alina's sworn declaration of ownership of the shares, and the discretion given to the district court's "application of the legal standards to the underlying factual findings," *see Erickson v. Erickson*, 2018 UT App 184, ¶ 12, 437 P.3d 370 (quotation simplified), we cannot say that the district court erred in rejecting Alina's argument that the Stipulation was unenforceable based on mutual mistake.

## II. Inequitable Division of Marital Assets

¶18   Alina also argues that, because the district court concluded that Michael was entitled to an award of one half of the Luxoft shares in accordance with the Stipulation, the court's distribution of property was inequitable. She contends that, except for the 5,886 shares that had vested by the time of the Stipulation and the couple's separation, Michael did not and will not contribute to the vesting of the remaining shares to which she is entitled and that, because the Stipulation awarded Michael the entirety of his distribution from shares he owned in 2014, the Stipulation awards Michael more of the marital property than is

equitable. "In the division of marital property, the trial court has wide discretion, and, while the appellate court is not necessarily bound by its findings, the findings are presumed valid and will not be disturbed unless the record indicates . . . manifest injustice or inequity." *Colman v. Colman*, 743 P.2d 782, 789 (Utah Ct. App. 1987). "Generally, in a divorce proceeding each party is presumed to be entitled to . . . fifty percent of the marital property," but "this presumptive rule of thumb . . . does not supersede the trial court's broad equitable power to distribute marital property." *Bradford v. Bradford*, 1999 UT App 373, ¶ 26, 993 P.2d 887 (quotation simplified). When the parties have stipulated to the division of property, "[t]he court need not necessarily abide by the terms of [the stipulation]," but such terms should "be respected and given great weight" by the court. *Pearson v. Pearson*, 561 P.2d 1080, 1082 (Utah 1977).

¶19 Reviewing the Stipulation's award of one half of the Luxoft shares to Michael, the district court concluded that "the parties' Stipulation [was not] so inequitable or lopsided to warrant setting [the Stipulation] aside under equitable principles." The court based its conclusion on its finding that Alina was aware before entering into the Stipulation that vesting of the remaining unvested shares would require "post-separation and post-trial efforts" and nevertheless stipulated to the award of one half of all vested and unvested Luxoft shares to Michael. The court also found that the couple had "worked together for years with the ultimate goal of a big payoff from the investment of time and energy into the Luxoft endeavor." "Because we lack the advantage of seeing and hearing witnesses testify," the district court's "findings of fact are presumed to be correct." *See Baker v. Baker*, 866 P.2d 540, 542–43 (Utah Ct. App. 1993) (quotation simplified). Here, Alina has not demonstrated that these findings "are so lacking in support as to be against the clear weight of the evidence." *Id.*

¶20 In light of these findings, Alina has not shown how the court's ultimate division of property constituted an abuse of discretion resulting in "manifest injustice or inequity." *See Colman*, 743 P.2d at 789. The district court was required to give the Stipulation "great weight," *see Pearson*, 561 P.2d at 1082, and Alina specifically agreed that "the Stipulation is fair and reasonable." Alina has not met her burden of showing that, despite her earlier statement, the Stipulation was so inequitable that the district court erred in accepting the terms to which she agreed. Accordingly, we conclude that the district court did not err in determining that the Stipulation equitably distributed the parties' marital property.

CONCLUSION

¶21 The district court did not exceed its discretion in concluding that there was no mutual mistake at the time the parties entered into the Stipulation as to whether all the Luxoft shares were marital property and that distributing the shares in accordance with the Stipulation was equitable. We therefore affirm.

———————